## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **ALAN REGINALD WALDEN, as** | : | |
| **parent and natural guardian of Corey** | : | |
| **Luke Walden, a deceased minor,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **5:03-CV-0398 (DF)** |
| | : | |
| | : | |
| **The City of Hawkinsville, Georgia, a** | : | |
| **municipal corporation,** | : | |
| | : | |
| **Defendant.** | : | |

## O R D E R

### I.    INTRODUCTION

Plaintiff Alan Reginald Walden ("Plaintiff") initiated this wrongful death action against Defendant City of Hawkinsville ("Defendant") following the death of Plaintiff's minor son, Corey Walden. On August 6, 2003, Corey Walden tragically drowned after being swept into a drainage culvert built and maintained by Defendant.

Plaintiff's wrongful death claim rests on a negligence theory and a nuisance

1

theory.  Under his negligence theory, Plaintiff claims: (1) Defendant negligently

constructed and maintained the drainage system; and (2) failed to fix defects in the

drainage system after receiving actual and constructive notice of those defects.  *See*

O.C.G.A. § 32-4-93(a) (Lexis 2005).  Under Plaintiff's nuisance theory, the drainage

ditch constitutes an ongoing nuisance for which Defendant should be held liable.

Before this Court is Defendant's Motion for Summary Judgment (tab 16).

Defendant asserts in its Brief in Support of Motion for Summary Judgment

(tab 18) that it has sovereign immunity from Plaintiff's claim under O.C.G.A. § 36-

33-1(a).[1]  While Plaintiff initially alleged in his Complaint that Defendant waived its

sovereign immunity under the preceding statute with the purchase of  insurance,

Plaintiff did not address Defendant's sovereign immunity claim in its Brief in

Opposition to Defendant's Motion for Summary Judgment.  Therefore, the Court

treats Plaintiff's argument as abandoned, and addresses only Plaintiff's negligence

and nuisance claims.  Even assuming the City is not entitled to sovereign immunity,

---

[1]  The relevant portion of O.C.G.A. § 36-33-1(a) provides:

". . . except as provided in this Code section . . . it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages. A municipal corporation shall not waive its immunity by the purchase of liability insurance, except as provided in Code Section 33-24-51, or unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy. . . ." O.C.G.A. § 36-33-1(a) (Lexis 2005).

however, the Court concludes for the following reasons that Plaintiff cannot make out a negligence claim under O.C.G.A. 32-4-93(a), or a nuisance claim.  *See Thompson v. City of Atlanta*, 616 S.E.2d 219, 221-222 (Ga. Ct. App. 2005).

## II.    STANDARD OF REVIEW

The summary-judgment rule exists "to isolate and dispose of factually unsupported claims or defenses."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (West 2005); *see also Celotex Corp.*, 477 U.S. at 322.  A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In reviewing a motion for summary judgment, a court must review all the evidence in the record while "draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Maynard v. Williams*, 72 F.3d

3

848, 851 (11th Cir. 1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and entitle it to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### III.    FACTUAL BACKGROUND

On August 6, 2003, approximately 2.55 inches of rain fell on the Sioux Place Alley ("Alley") in the City of Hawkinsville, Georgia within a two hour period. (Stevenson & Palmer ("S & P") Rep. Ex. 3 at 4.)  The torrential downpour caused the storm water in the Alley's drainage channel to overflow the adjoining ditch and flood the street.  (S & P Rep. 4.)  The Alley is owned and maintained by the City of Hawkinsville.  (Def.'s Resp. To Pl.'s 2d Interrog. #1.)

As the rain fell, Corey Walden and Caleb Barnett entered the Alley on foot. (Barnett Aff. 2.)  Standing water obscured the boys' view of the street.  (Barnett Aff. 2.)  The two youths continued down the Alley, pausing to observe water flowing over the Alley from a drainage channel located under the street.  (Barnett Aff. 2.) Suddenly, Corey Walden lost his footing and fell into the drainage ditch.  (Barnett Aff. 2.)  Corey was swept into the drainage culvert where he subsequently drowned. (Barnett Aff. 2.)

Defendant constructed the culvert and drainage area in the early 1900s. (Tolliver Dep. 27.)  At the time of the incident, no fence or barrier stood between the edge of the street and the drainage ditch.  (Barnett Aff. 2.)  Seven months after the accident, an inspection revealed a 2' x 10' piece of lumber located thirty feet below

the entrance of the culvert.  The drainage ditch was also overgrown with grass and other vegetation at the time of the inspection.

In the years leading up to Corey Walden's accident, the drainage ditch had flooded; however, the ditch had never overflowed and flooded the Alley. (Murkerson Dep. 18; Tolliver Dep. 44-45.)  There have been no previous deaths related to drainage ditches and flooding in the Alley or surrounding areas. (Murkerson Dep. 18; Gordon Dep. 14-15.)

## IV.    LEGAL DISCUSSION

### A. Negligence

In this action, Plaintiff seeks to establish Defendant's negligence under O.C.G.A. § 32-4-93(a).  Plaintiff specifically alleges Defendant: (1) negligently constructed the drainage area at issue; (2) negligently maintained the drainage area; and (3) had notice of a defect in the drainage ditch.  *See* O.C.G.A. § 32-4-93(a).  This Order addresses each argument in turn.

### 1. Negligent Construction

Plaintiff claims a genuine issue of material fact exists as to whether Defendant negligently constructed the drainage culvert and ditch in the Alley.  The threshold issue in a negligence case is always the existence of a legal duty owed by the

6

defendant to the plaintiff.  *City of Rome v. Jordan*, 426 S.E.2d 861, 862 (Ga. 1993).

Whether a legal duty exists is a question of law.  *Id.*

Municipalities have a general duty to keep public roads[2] and sidewalks "in

a safe condition for travel in the ordinary modes."  *See Clark v. Raymond J. Pitts,*

*Inc.*, 256 S.E.2d 189, 190-191 (Ga. Ct. App. 1979).  If a municipality fails to uphold

this duty, it may be liable for damages and injuries resulting therefrom.  *Id.*  The

above rule is subject to one important qualification.  If municipal corporations "are

not required by statute to perform an act, they may not be held liable for exercising

their discretion in failing to perform the same."  O.C.G.A. § 36-33-2 (Lexis 2005); *see*

*Andrews v. City of Macon*, 382 S.E.2d, 739, 742 (Ga. Ct. App. 1989).

Plaintiff alleges Defendant negligently constructed the Alley's drainage

culvert and ditch.  Specifically, Plaintiff argues: (a) the culvert pipe was undersized;

(b) the drainage area should have been enclosed; and (c) the shoulder space between

the road and the edge of the drainage ditch was inadequate.  (Pl.'s Br. in Opp'n to

Def.'s Mot. Summ. J. 10.)

---

[2]A "public road" is a "way open to the public and intended or used for its enjoyment and for
passage of vehicles in any county or municipality of Georgia." O.C.G.A. § 32-1-3(24). This definition
explicitly includes a "drainage ditches" and "canals and culverts." O..C.G.A. § § 32-1-3(24)(N); 32-1-
3(24)(O). The Alley and adjoining drainage culvert and ditch fit squarely within the definition of a public
road.

**a. Size of Culvert Pipe**

Plaintiff argues Defendant had a duty to expand the culvert pipe at some point between the pipe's construction date and August 6, 2003. Plaintiff's engineer, Mr. Graham, suggested that a modern-day culvert should be designed to accommodate a 25-year storm event. (Graham Dep. 42.) Graham recommended the culvert pipe measure 72 inches by 60 inches. (Graham Dep. 43.) The pipe currently measures 60 inches by 42 inches. (S & P Rep. 5.)

Plaintiff relies on the deposition testimony of Defendant's engineer, Mr. Tolliver, to prove the culvert pipe was undersized. Mr. Tolliver conceded the culvert was undersized for a 25-year storm event. Mr. Tolliver also conceded that the culvert's size made it prone to flooding. Notwithstanding this testimony, both parties agree the culvert pipe was properly designed to meet the drainage needs of the Alley at the time of its construction, and there were no applicable guidelines or standards for the construction of a culvert at that time. (Graham Dep. 62; Tolliver Dep. 26-27; S & P Rep. 7.)

Plaintiff also relies on the Unified Land Development Regulations of the Hawkinsville Code (governing the development/construction of drainage systems) to prove the culvert pipe was negligently constructed. Plaintiff's reliance on the

Hawkinsville Code is misplaced.  The Hawkinsville Code was not enacted until 1996, and it only applies to new structures and renovations of existing structures. The drainage culvert and ditch are not new structures.  Further, Plaintiff offers no evidence of any renovations to the culvert pipe or surrounding area between 1996 and August 6, 2003 that would have imposed a duty on Defendant to redesign the culvert to meet modern standards.

The Court concludes that Defendant had no independent legal duty to enlarge the culvert pipe before Corey Walden's accident, and no genuine issue of material fact exists on that question.

**b. Road shoulder**

Plaintiff argues a fact issue exists as to whether the road shoulder between the Alley and drainage ditch is adequate.  The shoulder between the Alley and the culvert measures about two or three feet. (Graham Dep. 37.) Mr. Graham believes the shoulder should measure six feet.  Graham bases this opinion on the Design Guide for the use of engineers in Augusta-Richmond County, Georgia.  (Graham Aff. Ex. A at 5.)  Plaintiff also points to the Hawkinsville Code, which  requires streets with swelled ditch drainage to have grassed shoulders of five feet.

The Design Guide for the use of engineers in Augusta-Richmond County,

Georgia is just that–a guide.  It is not an ordinance, a statute, or other regulation that

requires Defendant to enlarge the existing shoulder width.  The Hawkinsville Code

is also inapplicable to these facts because the drainage culvert at issue is not a new

construction and it has not been renovated since 1996.  In short, Plaintiff is unable

to direct the Court to any applicable regulation requiring Defendant to enlarge the

existing shoulder.

The Court concludes Defendant had no independent legal duty to enlarge the

width of the shoulder before Corey Walden's accident, and no genuine issue of

material fact exists on that question.

### c. Fence / Guardrail

Plaintiff next argues that a material fact issue exists as to whether Defendant

had a duty to erect a guardrail or fence around the drainage ditch.  Mr. Graham

asserts Defendant should enclose the drainage ditch with an eight foot fence.

(Graham Dep. 43-44; S & P Rep. App. B. at 5.)  Mr. Graham gleaned this opinion

from the Design Guide for Augusta-Richmond County.  (Graham Dep.  57, 69).

Plaintiff also relies on the Savannah District of the U.S. Army Corps of Engineers,

which recommends a fence around drainage channels in residential areas.  (Tolliver

Dep. 31; S & P Rep. 8-9.)

The Design Guide for Augusta-Richmond County, the U.S. Army Corps of Engineers standards, and other sources cited by Plaintiff only provide recommendations and guidelines.  These guidelines do not impose an independent legal duty upon municipalities to comply with the recommendations, and no applicable statute imposed a duty on Defendant to enclose the drainage ditch before Corey Walden's accident. *See* ***Tamas v. Columbus***, 259 S.E.2d 457, 458 (Ga. 1979) (defendant city's decision not to erect fence between a road and creek was discretionary nonfeasance, rather than misfeasance).

The Court concludes Defendant had no independent legal duty to erect a fence around the drainage ditch before Corey Walden's accident, and no issue of material fact exists on that question.

**2. Negligent Maintenance**

Plaintiff argues an issue of material fact exists as to whether Defendant negligently maintained the drainage culvert and ditch.  Plaintiff alleges the drainage area was not properly maintained because: (a) Plaintiff's engineer located a 2' x 10' piece of lumber thirty feet below the entrance of the culvert during his inspection; and (b) the site and nearby sites needed "de-grassing" at the time of the inspection.

### a. 2' x 10' Board

Mr. Graham inspected the drainage culvert on March 16, 2004, approximately seven months after the accident. (Graham Dep. 11.) Mr. Graham contends that a 2' x 10' piece of lumber located thirty feet below the entrance of the culvert caused additional storm water backup on the date of Corey Walden's accident. (Graham Dep. 50.) Mr. Graham does not know whether the board was in the culvert on August 6, 2003, or to what extent, if any, the board contributed to a back-up of storm water in the culvert. Defendant received no complaints regarding excess flooding or debris prior to August 6, 2003.

Plaintiff cannot identify a code, guideline, ordinance, regulation, standard practice or other legally binding authority requiring Defendant to periodically inspect its drainage ditches and culverts. *See Andrews v. City of Macon*, 382 S.E.2d at 742 (concluding Georgia Municipal Water Authority had no duty to conduct periodic inspections of all water pipes in absence of statutory provision requiring such inspections).

Thus, the Court concludes Defendant had no independent legal duty to periodically inspect the drainage ditch and culvert, and no issue of material fact exists on that question.

### b. "De-Grassing"

Plaintiff argues the Alley culvert was not properly maintained because the culvert was overgrown with grass, roots, and other vegetation at the time of Mr. Graham's inspection.  (Graham Dep. 51, 73.)  Mr. Graham relies on a 1999 Report noting the existence of the above condition as proof that the overgrowth continued until August 6, 2003.  The impact of the alleged overgrowth on the flooding in the culvert ditch is unknown.

Defendant claims the ditch was maintained and the grass was regularly cut. (Murkerson Dep. 17.)  Even if Plaintiff's above contentions are true, however, Plaintiff has not demonstrated a causal relationship between the alleged overgrowth and the flooding in the culvert and ditch on August 6, 2003.  Thus, the Court concludes no issue of material fact exists on the question of whether Defendant negligently maintained the Alley culvert and ditch.

### 3. Notice

In the absence of a specific law requiring a municipality to act, actual or constructive notice of a defect creates a legal duty for the municipality to remedy the defect.  *Andrews*, 383 S.E.2d at 742.

Plaintiff asserts under the next prong of O.C.G.A. § 32-4-93(a) that Defendant

13

had actual and constructive notice of a flooding problem in the Alley before Corey Walden's accident.  (Pl.'s Br. in Opp'n to Def.'s Mot. Summ. J. 15.)  Plaintiff also alleges Defendant had actual or constructive knowledge of defects concerning the size of the culvert, the inadequate shoulder width, and the lack of a barrier around the culvert.  The Court will treat Plaintiff's claims of actual and constructive notice separately below.

### a. Actual Notice

In the context of municipal liability, actual notice is generally defined as information "concerning the defect having been actually communicated to, or obtained by, an employee of a governmental body responsible for acting on the information so received or obtained." *City of Dallas v. Donovan*, 768 S.W.2d 905, 908 (Tex. App. 1989) (internal citations and quotations omitted). The "defect" complained of must be of the same or similar character as the condition encountered by the plaintiff.  *See Thompson*, 616 S.E.2d at 222.

Plaintiff incorrectly equates Defendant's actual notice of prior flooding within the drainage ditch and in streets near the Alley with actual notice of a problem in the drainage culvert that caused excess storm water to flood the Alley on the day of the accident.  Even if Defendant knew of the prior flooding within the ditch and nearby

14

streets, Defendant received no information (in the form of prior injuries, complaints, or work orders) relating to the defective condition that existed on August 6, 2003; namely, the flooding of the Alley itself due to an overflow of storm water from the drainage ditch.

Plaintiff also alleges Defendant had actual notice of the defects concerning the size of the culvert, the inadequate shoulder width and the lack of a barrier around the culvert ditch.  Again, Defendant's knowledge of the foregoing imperfections does not constitute actual notice.  None of the imperfections cited by Plaintiff resulted in  injuries, work orders, or complaints prior to August 6, 2003.

Accordingly, the Court finds Defendant did not have actual notice of a defective condition prior to Corey Walden's accident; thus, Defendant had no duty to renovate or repair the drainage  culvert and ditch before that date.

### b. Constructive Notice

Constructive notice is "information or knowledge of a fact imputed by law because the fact could have been discovered by proper diligence and the situation was such as to cast upon a person the duty to inquire into it." *Hamilton v. Edwards*, 267 S.E.2d 246, 246 (Ga. 1980).  In the municipal liability context, constructive notice of a defect may be shown by: (i) testimony as to how long the defect existed prior

to an accident; (ii) objective evidence that the defect existed over time;  and (iii) evidence that other persons had also been injured as a result of the same condition over a period of years.  *Crider v. City of Atlanta*, 361 S.E.2d 520, 521 (Ga. Ct. App. 1987); *see also, e.g., Thompson,* 616 S.E.2d at 222.; *Quinn v. City of Cave Spring*, 532 S.E.2d 131, 134-135 (Ga. Ct. App. 2000); *Andrews*, 382 S.E.2d at 740.

The question of constructive notice is generally one for the jury.  *Andrews*, 382 S.E.2d at 741.  In the absence of *any* evidence as to constructive notice there is "no reasonable ground for two opinions, and thus the issue of negligence is a matter of law, not a question of fact for the jury.**"**  *Id.* at 742 (emphasis added).

The Georgia Court of Appeals recently applied the constructive notice analysis in a case involving analogous facts.  *See Thompson v. City of Atlanta*, 616 S.E.2d 219 (Ga. Ct. App. 2005).  In *Thompson,* a motorist sued a city after her vehicle hydroplaned on a large body of water covering a city roadway.  *Id.* at 220.  The plaintiff's vehicle struck several trees, and the impact caused the death of the plaintiff's infant son.  *Id*.  At trial, the plaintiff offered evidence that the curb inlet in the roadway that flooded was undersized for a ten-year storm event.  *Id*. at 221.  The plaintiff also offered the affidavit testimony of a witness who testified that heavy rainfall resulted in standing water covering the roadway.  *Id.*  The witness did

not know how long the alleged defect had been in existence. *Id.* at 222. The trial court concluded that the city did not have notice of any defect at the intersection, and entered summary judgment in the city's favor. *Id.* at 220. The appellate court affirmed, noting that the city had no knowledge of: (i) other vehicle accidents due to standing water occurring at the intersection where the plaintiff's accident occurred; or (ii) how long the alleged defect had been in existence. *Id.* at 222.

Plaintiff argues Defendant had constructive knowledge of the alleged flooding problem and design defects in the Alley and adjoining culvert before Corey Walden's accident. (Pl.'s Br. in Opp'n to Def.'s Mot. Summ. J. 15.) Plaintiff cites the deposition testimony of Defendant's engineer, Mr. Tolliver, as proof of Defendant's constructive knowledge. Tolliver admitted the culvert is undersized for a 25-year storm event. (Tolliver Dep. 26.) Tolliver opined that Defendant could expect flooding in the Alley due to the culvert's size. (Tolliver Dep. 45.) Tolliver also noted that Hawkinsville officials knew about the flooding issues in the area surrounding the Alley. (Tolliver Dep. 43-43.)

Plaintiff further alleges Defendant knew of additional defects; namely, the inadequate shoulder width between the Alley and the drainage ditch, and the lack of a barrier around the ditch at least two and a half years before Corey Walden's

17

accident.  This assertion is based on evidence that no construction or changes were made to the Alley or adjacent culvert during that time.  (Pl.'s Br. in Opp'n to Def.'s Mot. Summ. J. 17.)

Plaintiff's evidence does not establish that Defendant had constructive notice of any flooding problem or design defect in the Alley or adjacent culvert. Defendant's city manager did not receive any information–direct or indirect–concerning storm water overflowing the drainage ditch and flooding the Alley within the last five years.  (Murkerson Dep. 10, 16, 18; Graham Dep. 30.)  The city manager had no record of any accident involving a person slipping into the drainage culvert during the last five years.  (Murkerson Dep. 16.)  Similarly, there were no recorded complaints about flooding or debris in the Alley prior to Corey Walden's accident.  (Gordon Dep. 14-15.)

Although drainage ditches in streets near the Alley often experienced flooding, Plaintiff has not demonstrated the effect, if any, of the nearby flooding on the flooding in the Alley on August 6, 2003.  Further, the record indicates Defendant investigated the complaints it received.  For example, when Defendant received notice of flooding at Third and Jackson Streets, Defendant hired an engineering firm to assess the problem and submitted a report to the Georgia Emergency

Management Association ("GEMA") requesting money for repairs. Defendant completed the recommended improvements before August 6, 2003. (Gordon Dep. 15.)

The Court concludes Plaintiff failed to raise a genuine issue of material fact as to whether Defendant had actual or constructive notice of a defect in the Alley or adjoining ditch and culvert.

Because Plaintiff failed to raise a genuine issue of material fact as to any of the grounds for proving Defendant's negligence under O.C.G.A. § 32-4-93(a), Defendant is entitled to summary judgment on the negligence claim.

## B. Nuisance

Plaintiff alleges a genuine issue of material fact exists as to whether Defendant created or maintained a nuisance.

A city may be held liable for creating or maintaining a nuisance–even if the city is "exercising a governmental function under the shield of sovereign immunity or a ministerial function." *City of Vidalia v. Brown*, 516 S.E.2d 851, 854 (Ga. Ct. App. 1999). A nuisance exists when: "(1) the defect or degree of misfeasance r[i]se[s] to a level exceeding the concept of mere negligence; (2) the act was of some duration and the maintenance of the act or defect was continuous or regularly repetitious;

and (3) the City failed to act within a reasonable time after knowledge of the defect or dangerous condition." *Id.* "A single isolated occurrence or act, which if regularly repeated would constitute a nuisance, is not a nuisance until it is regularly repeated." *City of East Point v. Terhune*, 242 S.E.2d 728, 729 (Ga. Ct. App. 1978). The issue of whether a nuisance exists is generally a question of fact, but in some cases it can be held as a matter of law that no nuisance exists. *Thompson*, 616 S.E.2d at 222.

Plaintiff cannot establish a genuine issue of material fact as to his nuisance claim for two reasons. First, Plaintiff's evidence does not show that flooding due to the alleged defects in the drainage culvert was "continuous or regularly repetitious." There is no evidence indicating the drainage ditch had ever flooded the Alley before August 6, 2003. Second, the Court has already found that Plaintiff failed to show Defendant had notice of any defective condition with respect to the Alley and/or adjacent drainage culvert before Corey Walden's accident. Accordingly, Defendant is entitled to summary judgment on the nuisance claim as well.

## IV.   CONCLUSION

The Court realizes that a young boy died in this case through no fault of his own. There is a natural tendency in this society to assign blame in such cases. The

legal reasoning above may sound overly technical to Plaintiff, but that is the way the case must be decided under these facts and the law.

Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's negligence claim is **GRANTED**.  Defendants' Motion for Summary Judgment on Plaintiff's nuisance claim is **GRANTED**.


SO ORDERED, this 21st day of September, 2005.


**/s/ Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/jab